Let's wait and let everyone get settled. Okay, Mr. Ebaugh? Good morning, Your Honors. My name is Nelson Ebaugh. I represent Jonathan Avery. May it please the Court. Avery pleaded to a terrible crime, knowing he would have a long sentence. But unfortunately, the district court failed to follow the Federal Rules of Criminal Procedure in the Sentencing Guidelines when opposing the sentence. This morning, I'm going to begin with talking about the partial absence of factual findings as to the enhancement. To be sure, the district court did describe Mr. Avery's conduct as sinister, exploitation of the worst type, and also identified it as trafficking in women. Although the district court made these findings, the district court failed to make a key finding, whether it was actually tied to the offense of conviction. Section 2G 1.1b1, the enhancement at issue, allows a four-level enhancement if the offense involved fraud or coercion. In turn, offense is defined broadly to include not just the offense of conviction, but also the accompanying relevant conduct. And relevant conduct is, in turn, defined as all actions that took place during the offense of conviction, in preparation for the offense, and to avoid detection of responsibility. Sinister conduct here, where Avery was trying to persuade the victim, coerce the victim to stay in Houston, that was separate from the underlying offense in this case, which was persuading the victim to travel interstate commerce to Houston to engage in prostitution. But at the first sentencing, the district court said it was coerced prostitution. That is correct. Although it was coerced prostitution after she was already in Houston, after the crime that Avery pleaded guilty had been completed. OK, maybe just step back, because we're focused on just a coercion enhancement, correct? That's correct. And the argument you're making is there was evidence coercion, but not as to this charge? That is correct. So it's not a process argument based on Rule 32, or a constitutional argument based on lack of presence? Or it is? In other words, what's your argument that you're asking us to reverse the sentencing? It's just a pure evidentiary argument? No, no. Well, I've made three arguments in the brief. The first, there's an unusual posture here, in that there was an enhancement. There were four points added at the sentencing, but it just is. Well, I mean, you had the first sentencing, and then it looked like, correct me if I'm wrong, it looked like the district court was thinking, oh, he pled to it. Let's go back and look at the factual basis. But then that's when you moved to withdrawal, saying if that's what you think I pled to, I don't want to be on a guilty plea. Second sentence comes, district court says, you're right. It's not there. But then all that's left is the B enhancement. But no discussion was ever had. But so, OK, that's what I'm wondering. Is that the error, that there was no discussion? Is that your error, or is your argument of error that there isn't any evidence? Or is it both? It's both. And you've only presented the evidentiary one so far? That's correct. Right, at this oral argument. And you did not object to the calculation of the base offense level at the second sentencing? Well, that's what I initially argued in the opening brief. I apologize. I continued to look at it over the weekend as I was preparing for this oral argument. And when I was looking at the sentencing transcripts further, I did find some language that could be interpreted as an objection. For instance, at the first sentencing, defense counsel argued that his client didn't have to threaten anybody to engage in this occupation. That's at record on appeal 536. And then also at the first sentencing, defense counsel said, he's not guilty of these enhancements that they're trying to enforce on the base offense level. That's at ROA 540. And then at the first sentencing hearing, the defense attorney from the Federal Defender's Office said, he's in fact not guilty of these accusations that are being used to enhance the base guideline level, ROA 541. So I would urge the court to consider those as objections. I wasn't there at the sentencing, and so I don't understand exactly the behind the scenes of how this was operating. But I would argue that even though the district court and the government weren't talking about this four-level enhancement for fraud or coercion, that these statements made by the defense counsel, by the federal defender of this sentencing, would actually qualify as objections to preserve error. Also at the second hearing, the second sentencing hearing, the Federal Defender's Office attorney said, I would like the court to recognize that this was an adult female who came down from Iowa to Texas to engage in prostitution with my client, Jonathan Avery. Again, and that's at ROA 197. I would argue that those qualify as objections sufficient to preserve error in this case for all three points that were raised in Mr. Avery's appellate brief. One of the things that I would also like to point out that I think is very significant is that during the second sentencing hearing, the district court said that the victim's prostitution became unwilling, quote, unquote, became unwilling, even if it was willing at the beginning. So in other words, even the district court is recognizing that there's a tying difference between the fraud and coercion and the underlying offense in this case. I'd like to switch gears now. 2242, correct me, it's a scheme offense though, right? Not a scheme. It's persuading a victim to travel interstate commerce to engage. And the indictment said what? Honor about just a single day or not? Yes or no? It said honor about the day that was identified was the day that the victim dialed 911 to contact the police. OK, so that's well after. That's correct. The movement. That's correct. She had been there for two weeks. But so if you're arguing that we have to freeze frame to assess coercion at the point of enticement, the indictment is actually identifying a later date. I'm just thinking aloud. It is. It's identifying a later date, but it's got the qualification of honor about. I know, but my point is, it sounds like what you're arguing is a variance argument, that the guilty plea here and the factual basis and the sentencing all corresponded to something later than what was charged. But you pled to it, the honor about later date. Anyway, move on to your second argument, or third, or what? Yeah, the second argument is in connection with the second issue that was raised in Mr. Avery's appellate brief. It's about the lack of notice in this case, which didn't comply with either the federal rules of criminal procedure or the sentencing. Notice of the enhancement? That's correct, your honor. Right. But I thought the law was that you only have to know the facts. Understood. Understood. But here, there weren't facts that would have put Mr. Avery on notice. Understood. In Garcia, it does talk about how if they have actual knowledge of the facts, that's enough to put him on notice, because a defense attorney should be aware of what the sentencing guidelines could, the consequences of it. But I think it's very important to point out that in a statement that the victim made to Detective Sergeant Joel Gordon, she said that when she first arrived in Houston on March 10, 2022, she learned that she would have to act as a prostitute and advise she was originally OK with it, because she had been a sex worker in the past. There's just no indication of coercion to have her come down from Iowa to Houston to engage in this activity. I mean, the PSR describes threats and sexual assault. That is correct. But those occurred. This all comes down to chronology. Right, that's correct. OK, I thought when you were talking about Garcia, you were saying your client wasn't even present when the enhancement that ends up in the J&C appears. You're not making that argument, the process argument. No, I am making the process argument that I How do you get around? Judge Smith asked about Garcia. In your reply brief, you cite CF Vega. But in Vega, that's a supervised release condition, and the court ends up affirming. So what's your authority that there was not sufficient notice of the enhancement, case authority? I'm actually more relying on the chronology, as he suggested. I'm relying on the chronology, because there's a lot of documentation about Instagram messages, back and forth, between the victim and Avery. And the Instagram messages make it clear that the victim voluntarily came down to Houston initially. The Instagram message, for instance, here I'll give you some quotes from the Instagram messages. Avery's talking about her working at a club. And that's at ROA 281. And then Avery says, that would also include, quote unquote, tricks. That's at ROA 281. The victim responds, because it seemed you got to make it on a corner. That's at ROA 281. And then she further says, and I'm not built for that. That's at ROA 281. Avery responds, no, the corner is the worst way to chase a bag out here. That's ROA 281. Chasing a bag out here, by the way, means a way to make money. So they're talking very practically about why she would be coming down to Houston. And there's no coercion in this exchange. In fact, even as recognized in the PSR, they talked about how the word P stands for pimp. And they were talking about this very candidly. Again, in these Instagram messages, there's no evidence of any coercion with her coming down to Houston. Going back to the chronology, because I as Judge Hankinson pointed out, the chronology is crucial in this case. The texts show that the, by the way, these Instagram conversations took place on March 8, 2002. She arrived in Houston about two days later on March 10. Apparently, she was operating pursuant to their agreement for about a week. And then after a week, everything changed. There was a big shift. But by that time, that crime that Avery pleaded guilty to had already been completed. And so you have a new development in this relationship where Avery may have been acting coercively. Where is it in the record that you objected to any kind of finding of coercion? Well, for instance, at the first sentencing hearing, when the federal defender said my client didn't have to threaten anybody to engage in this occupation, and when the federal defender says he's not guilty of these enhancements that they're trying to enforce on the base offense level, that's an ROA 540. And where he says he's, in fact, not guilty of these accusations that are being used to enhance the base guideline level, and that's an ROA 541. Again, I apologize I didn't make that crystal clear in the opening brief or the reply brief. This is just a very unusual fact pattern. I've never seen one like this before, where there's four points applied, and nobody addresses it at all. And I didn't even discover its existence until I looked at the statement of reasons, and I saw that that apparently was the basis for this enhancement. I see that my time has run out, unless the court has to. You saved time for a bubble. Thank you, Mr. Reed. Thank you, Your Honor. Mr. Reed. Good morning, Your Honors. May it please the court. John Reed on behalf of the United States. Your Honors, I was prepared to talk at length about the alleged lack of notice and factual findings here and the offense level of 15, but I'm hearing for the first time Mr. Ebaugh's argument that he now says that there was a preservation of the objection to the 15 level enhancement. He says that there was no finding of fraud in relation to the elements of this offense. These are arguments that are being made for the first time before this court. They are not in his brief. It's pretty well established this court does not consider arguments raised for the first time an oral argument. None of the factual citations that he just gave you are in his brief, either. And we do understand that because we run across that all the time. But assuming we're here, so why don't you go ahead and respond. And we, of course, will take into account whether it was timely raised. I will do my best, Your Honor. Mr. Avery's conviction should be affirmed because he has not shown reversible error in connection with either the calculation of the offense level or the guideline range. The discussions during both sentencing hearings here were centered around or cabined by the PSR's calculations under the cross-reference in relation to how Mr. Avery pleaded guilty. And I think Judge Higginson, you sort of outlined that at the beginning of the argument exactly as I was going to. And that is the cross-reference here is to the sexual abuse statutes, which triggers the sexual abuse guideline. Mr. Avery's main argument was he didn't plead guilty to an offense involving sexual abuse because he didn't admit to using force or threats of physical force against his victim. That was always his argument. And he wanted to avoid a significant increase in the base offense level, which was 30 within an associated four-level specific offense characteristic for sexual abuse under 2A 3.1. And as Judge Higginson noted, Judge Rosenthal, a very capable and conscientious district judge, thought that by entering his guilty plea, he may have waived the argument that he was making. And so she wanted to consult the re-arraignment transcripts to see exactly how he had pleaded guilty. Turns out it was true. He didn't, during re-arraignment, admit to using force. He says, oh, I enticed her. I persuaded her. I didn't use force. I didn't force anybody to be a prostitute. And actually, at first, he denied even knowing she was going to be a prostitute. And then he came around and admitted that. But the fact is, he didn't admit specifically to force. And so Judge Rosenthal said, OK, well, I'm not going to apply the guideline range. Excuse me, I'm not going to apply the cross-reference in subsection C. So she took that off the table. But by doing so, she stayed within the guideline for the offense of conviction, which was 2G 1.1. That left subsection A for the base offense level, subsection B for the separate specific offense characteristic for cohesion or fraud, which is separately defined. I mean, what he did extensively brief is, in all that very sedulous, OK, let's make sure it's not a cross-reference under C, what never happened at the second sentencing is, but there is still a subsection B enhancement for the same levels. No, it's not the same level. Well, four levels up, right? Four levels up. So my point is, when Judge Rosenthal says, and correct me if I'm wrong, at the second sentencing, I won't apply an enhancement or cross-reference for physical force, that sounds like she's not going to apply C or B. She never says, oh, but I'm not going to do C, as I thought I might under the guilty plea. But, counsel, you should be prepared and know now you're still going to get four levels because of subsection B. That's never clarified. She didn't state that specifically. You're right. But the sentence that you just read is, if I follow what he pleaded guilty to, then I would not apply the enhancements or cross-reference for cohesion and physical force. You read that correctly, Your Honor. What were they talking about at that point? The increased base offense level of 30 and the additional four-level specific offense characteristic under the sexual abuse guideline. And I think, like you, it sounds like today they aren't pressing notice. They're accepting Garcia, just as Judge Smith described it, which is, you're on notice if the guidelines put you. So it's all about facts. So now let's shift to his chronology fact point. So what in the PSR described coercion connected to the enticement, not the sort of deteriorating later relationship? So first of all, he hasn't cited any authority that the cohesion has to be specifically tied to the elements of the offense, the cohesion and enticement. The guideline reads that the offense enhancement applies if the offense involves cohesion or fraud. And I think the use of the word involves is very specific on the part of the Sentencing Commission. And normally, we look at involves as something much broader than necessarily the element. So in other words, the elements here are, sure, persuade, entice to travel in interstate commerce. And then once she got here, she was forced to do other things, regardless of if she thought she was going to be a prostitute once she arrived in Houston. She didn't want to do that anymore, but she had to keep doing it. And she was so fearful, she called 911. Though, when he read the Instagram, and admittedly, this is pretty far away from what I thought the briefs were saying, but she does, at some point, it sounds like, say, I'm not built for that. So are you conceding that there was a? No, I'm not conceding anything, Your Honor, because where she says she's not built for that, I think that's one way of reading it. But I think it's ambiguous. I don't think that's the only way. She may have thought she was going to get involved in something once she got to Houston, but she didn't know the extent of how she would be forced to have sex with up to five men a day, give all of her money to Mr. Avery, also known as Drippy, who was a member of a gang that she feared, and who was known for prostituting young women. In a guilty plea, we're just usually looking at the PSR. What is the fact statement in the PSR that describes violence connected to the 2242 offense? Do you know it off the top of your head? Yeah, well, so. Why did the P probation office say this involved physical? Yes, and so the probation office took it to the next level, right, as being sexual abuse under the sexual abuse act. That's all they did? They went down subsection C, they never came back to B? Correct. Oh, I see. The probation office only applied the subsection C, and that's why I say that's what they were always talking about, was subsection C. It's paragraphs 11 and 12, where the probation officer goes through the threats that were made to the victim. And they all do post-date arrival in Houston? Yes, yes. She arrived here in Houston, and I think it's paragraph 12, she said she wanted to leave the residence, and he threatened to kill her. And he sent a text message that said, you know, people will die if they ever get goofy, and you will too. And that's what the probation office was looking at. Nowhere in the sentencing in front of Judge Rosenthal did the defense attorney then say, your honor, we admit there's tons of force, but it wasn't chronologically in time. And related to that, you heard me asking about the on or about language. When was this crime that he pled to? When did he plead the date that it occurred? I'm going to be honest, I don't recall what the exact language of the information. He was originally indicted for sex trafficking, allowed to plead guilty to an information. And I was not prepared to address that specific question. But in the sentencing transcript, is there ever an objection, your honor, we admit there was coercion and physical force, but it was after the completion of the offense? Did that objection ever get to you? No, he never says that. He maintained all along that there was no coercion and no force and- At all? At all. Yeah, that was just straight up, there was no coercion. Now, I think that argument does apply to both subsections. You could make that argument. But what happened was the district court takes the subsection C cross-reference out. I'm not going to apply the sexual abuse guidelines. So that meant she was staying within the guideline for the offense of conviction, again, 2G 1.1. And she says, after this announcement that I'm not going to apply it, your offense level is 15. Your guideline range is 41 to 51 months. There's only one way that the district court could have arrived at an offense level of 15 and a guideline range of 41 to 51 months. And that's by applying the subsection B for level enhancement. That seems conclusive of notice under our law. But then we're in this world of, is there actually a preponderance of evidence to support? My position is he hasn't argued that the subsection B doesn't apply. That is not in his brief. He argues there were no findings. And he argues that there was no notice. He never says that the district court incorrectly applied it. He says she didn't apply it in the procedurally proper manner with notice and findings. Did the government make that recommendation to Judge Rosenthal? No, but they did not have to. Angeles Mendoza, which is a case cited in the reply brief, says that the district court could sua sponte apply upward enhancements, even where the defendant had no explicit knowledge of the possibility of them, as long as the defendant was aware of the facts supporting the enhancement. And the facts, Judge Higginson, are those that are in the PSR. The court adopted the PSR. But she also found Mr. Avery's conduct to be, OK, sinister, exploitation of the worst kind, coerced prostitution, trafficking in women. Just as. That amalgam. I'm sorry? You're saying that amalgam is a district court finding. Yes, you may infer that that's the finding of cohesion, because we don't equate trafficking in women with voluntary conduct. We don't say that they were trafficked and they were exploited. You don't exploit someone who's voluntarily participating, just as a general matter. Right? So that's my argument there. And so she adopted the PSR. She made these findings about the conduct. She specifically said at the first sentencing hearing, this is coerced prostitution. She said that. Now, she backed off the application of the cross-reference. But she never said, that means there's no enhancements. And again, she just stayed within the 2G1.1. Essentially, she gave him a huge reduction. And this was to his benefit. By going down from a range of 188 to 235 months, what became 41 to 51 months. Now, he argued for an offense level of 11. So he knew, and that would have been a 14 level enhancement with a three level reduction for acceptance. And he argued that it should have been 11. Right? He knew he wasn't getting that, because she said, no, your offense level is 15 and your range is 41 to 51. He never said, I know Mr. Ebal has argued that he objected to that, or there are statements to that effect. But in actuality, what he did was he argued for a sentence within that range, the 41 to 51 month range. He argued that a sentence within the guidelines that your honor just announced would be sufficient punishment. So what do you do with that? What do I do with that? I look at that as saying, well, it's plain error review at best here. He has not argued, and just getting back to the notice a little bit, in my view, he has not argued that the subsection B was inapplicable or didn't fit the conduct described. He has not argued that a more specific notice would have changed how he objected and would have mattered. And in United States versus Stanford, this court said that where the defendant didn't indicate how he would have objected with greater notice, that supported a harmlessness finding, even if there were some error notice. Right? I have a, if there are no further questions on that, I just have a backup argument that even assuming the court were to find some type of procedural error here, the government's view is that it would either have no effect on Mr. Avery's substantial rights under plain error review, or it would be harmless, even if you held the government to the burden, because the district court did vary upward from the 41 to 51 months. Based on the 3553A factors, she specifically commented on, again, the sinister nature. So that's the nature and circumstances of the conduct.  His criminal history, which was a six, despite his young, relatively young age. His membership in a gang, Judge Rosenthal noted that in the details of his history. The fact that she chose 72 months, flat six years, was not a multiple or derivative of any of the guideline numbers. And in fact, she said that the facts here could have supported a much harsher sentence, but I reluctantly, quote, reluctantly find this is sufficient, but not greater than necessary. And that seems to be a pretty plain indication that there was no number below that that was going to satisfy the sentencing goals. And then finally, in Sanchez-Hernandez, this court said, when addressing substantial rights and harmlessness, it looks at what was driving this court, this judge, to impose this sentence on this defendant. And here, Judge Rosenthal, at the conclusion, admonished Mr. Avery. She said, you have, quote, earned this sentence and it is this court's judgment. So again, I believe that qualifies as harmlessness or at least no showing of an effect on his substantial rights, depending on the standard of review. I think that's all I have, unless there are any further questions the government asks that this court affirm. All right, thank you, Mr. Reed. Thank you. Mr. Ebaugh for rebuttal. Thank you. Again, I've never seen a fact pattern like this before. Very unusual. When I first saw that four points, the enhancement of four was made, I thought that maybe the judge had gotten confused and originally took away the base offense level of 30, but forgot to take away that enhancement for C, which was also a four point enhancement, and that maybe, I don't know, the probation officer decided to put in the B enhancement in the statement of reasons. I don't know. Regardless of whether facts are confusing or not, the briefs can't be. So your argument in your principle brief did or didn't assert and point to an objection at sentencing that, oh, this is a fact objection. There was coercion. My argument is there was coercion, but it didn't attach to the time of the offense. Did your predecessor counsel make that argument in sentencing? And do you even make it in your principle brief? He didn't make it at sentencing, but I would argue that Judge Rosenthal, sui sponte, said that she would not apply the enhancements or cross-reference for coercion, and that that is enough to preserve error. The fact that she wouldn't apply the enhancements. I could see that being enough to say, therefore, she told us there wouldn't be an enhancement, so therefore, I didn't have notice there would be. And that's pretty much what I thought your brief said. Yes. But as I heard your principle argument now, you're not saying there's a lack of notice. You're just saying there isn't a preponderance evidence to support coercion at the time of incitement. I apologize if I've made any confusion. I'm still standing by my position that there was an adequate notice. And how do you get around Garcia? Well, because there were no facts that would have brought to his attention that B applied. The reason that there weren't any facts is like I explained before, the chronology makes it apparent that it was entirely voluntary when the victim came down to Houston. And if he didn't, the coercive, the arguably coercive actions took place a week or later after she came down to Houston, she traveled to Houston. And for that reason, they're not tied adequately to the underlying 24-22 offense. I think it's also very significant that the PSR never mentioned a subsection B of section 2G1.1 as a possible enhancement. That omission speaks volumes. And of course, as explained at the opening brief, the fact the court never mentioned it at the hearing. I think there's a real problem with this. We can't go forward in the future applying enhancements if the defendant has no awareness of the enhancement possibly applying, or even an awareness that there's allegedly facts that would make it applicable. And again, like I said, there's no- The hearing was good. You did object to the PSR. Judge Rosenthal paused. You filed a motion to withdraw. And then she said, you're right about all that. So the subsection she cross-referenced, she corrects based on a good defense attorney work. But defense attorney still has to be aware of the full set of guidelines. And then the range is described, which could only correspond to the subsection B cross-reference. So then what's the objection at the time? Again, the- No objection. There's no explicit objection. Again, we're relying on the case law of this court that a district court judge should respond to raising the issue that there's no enhancements that are gonna be applied. That's enough to preserve error. The one final point that I wanted to make is that the government said that the US Supreme Court decision of the United States Burns said that United States versus Burns was overruled. Although this court did say that in a footnote, Mr. Avery would argue that that was just dicta. And that although it was abrogated by Federal Rule of Criminal Procedure 32H and another portion of the sentencing guidelines, that the Burns rule is still applicable. Thank you, Your Honor. Unless you have any questions, I'll sit down. Yes, thank you, Mr. Ebaugh. Your case is under submission, and we notice that you're court appointed. We thank you for your work on behalf of your client and your willingness to take the appointment. Next case, Miller versus-